**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **3:17-CR-205** |
| | : | **(JUDGE MARIANI)** |
| **JONATHAN JACOME,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

Pending before the Court is Defendant Jonathan Jacome's Motion to Quash

Indictment ["Motion"] (Doc. 143). Defendant has filed this Motion pro se seeking to quash

the indictment to which he pleaded guilty on the basis that it violated the applicable statute

of limitations.

Jacome was initially charged by Indictment on July 11, 2017. (Doc. 1). On August 8,

2017, the grand jury returned a Superseding Indictment. (Doc. 13). On September 11, 2018,

the grand jury returned the final Second Superseding Indictment. (Doc. 82). The Second

Superseding Indictment charged Jonathan Jacome and his co-defendants with thirty-five

counts, including: conspiracy to defraud the government with respect to claims, false,

fictitious and fraudulent claims, theft of public money, aggravated identity theft, conspiracy

to commit wire fraud, money laundering conspiracy, unlawful monetary transactions,

conspiracy to obstruct justice, and obstruction of justice. (*Id.*). On September 26, 2018,

Defendant entered a not guilty plea on all counts charged against him. (Doc. 88).

1

On May 16, 2019, a Plea Agreement between Defendant and the Government was filed. (Doc. 113). On July 11, 2019, a change of plea hearing was held, and pursuant to the Plea Agreement, Defendant entered a plea of guilty to Count 30 of the Second Superseding Indictment. (Doc. 121–23). Count 30 of the Second Superseding Indictment is a charge of money laundering conspiracy in violation of 18 U.S.C. Section 1956(h). (Doc. 82, at 14). At the change of plea hearing, the Government additionally moved for the detention of the Defendant due to Defendant's failure to notify the probation office of his arrest in the City of Hazleton—a violation of the terms of his supervised release. (Doc. 123, at 25:9–20). The Court ordered the Defendant detained. (Doc. 128).

On September 23, 2019, Jacome filed a "Motion to Quash Indictments" pro se. (Doc. 129). The Court denied his pro se motion on September 24, 2019 as Jacome was represented by retained counsel at the time. (Doc. 130). Jacome filed pro se a "Motion to Grant as Uncontested or for a Writ of Mandamus" on November 29, 2019. (Doc. 137). The Court again denied this pro se motion as Defendant was still represented by retained counsel. (Doc. 139). Thereafter, on January 31, 2020, Jacome filed a "Motion for Leave of Court to Proceed Pro Se and to Officially Dismiss Private Counsel." (Doc. 142). Jacome then refiled his "Motion to Quash Indictment" pro se on February 6, 2020. (Doc. 143). Following a hearing on February 25, 2020, the Court granted Jacome's motion to proceed pro se and ordered the United States to file a response. (Doc. 147).

Defendant's Motion to Quash Indictment was filed on February 6, 2020. (Doc. 143). The parties have fully briefed the motion and it is ripe for decision. For the reasons set forth below, the Court will deny Defendant's Motion to Quash Indictment. (Doc. 143.).

## II. ANALYSIS

In his Motion, Defendant argues the indictment on which he was charged violates the statute of limitations: "[T]he movant respectfully contends that the period elapsed between the alleged date of May 1, 2011 to the Grand Jury indictment of 07/11/2017 surpasses the statute of limitations period." (*Id.* at 5). The Government provides three responses: the Defendant waived his right to file pretrial motions when he entered a guilty plea (Doc. 154, at 3); there was no violation of the statute of limitations (*Id.* at 4); and Defendant's attacks on counts to which he did not plead guilty are irrelevant (*Id.* at 5).

Defendant's argument that the statute of limitations had passed by the date of the indictment is based on an incorrect legal argument. Count 1 of the original indictment alleges the conspiracy took place, "From on or about May 1, 2011, the exact date being unknown to the Grand Jury, to on or about August 9, 2012." (Doc. 1, at ¶ 6). The applicable statute of limitations on the charged offenses is five years. 18 U.S.C. § 3282. Defendant asserts that the statute of limitations ran because more than five years elapsed between the date cited by the grand jury as the start of the conspiracy–May 1, 2011–and the date the original indictment was filed–July 11, 2017. (Doc. 143, at 5). However, the statute of limitations for conspiracies does not begin to run on the date of the first overt act, it begins

3

to run on the date of the last overt act committed during the existence of the conspiracy. *Fiswick v. United States*, 329 U.S. 211, 216, 67 S. Ct. 224, 227, 91 L. Ed. 196 (1946); *see also Luparella v. United States*, 335 F. App'x 212, 215 (3d Cir. 2009)("[I]t is well-established that the statute of limitations runs only from the time of the last overt act." (internal quotations omitted)). The August 8, 2017 indictment alleged the date of the last overt act committed during the existence of the conspiracy was August 9, 2012. (Doc. 1, at ¶ 6). Therefore, the time between the date alleged in Count 1 of the original indictment and the date of the original indictment was less than five years. Furthermore, Count 30 of the Second Superseding Indictment, to which Defendant pleaded guilty, alleges the date of the last overt act was October 9, 2014. This is less than three years from the August 8, 2017 indictment and clearly does not violate the five-year statute of limitations. (Doc. 82, at ¶ 27).

Defendant next argues:

[T]he indictment does not express specific dates of overt acts necessary to meet the elements of the charged conspiracy rendering ambiguity, in fact, the indictment continually declares the phrase "Between on or About", with no factual calculations for purposes of the statute of limitations under Title 18 U.S.C. § 3282.

(Doc. 143, at 5). The Second Superseding Indictment alleges several specific dates of overt acts within the statute of limitations. Count 30, to which Defendant pleaded guilty, specifies: "On January 12, 2013, conspirators purchased furniture…" (Doc. 82, at ¶ 28c); and, "From on or about March 3, 2011, to on or about October 9, 2014, the conspirators engaged in a pattern of transactions, including deposits and withdrawals of cash…" (*Id.* at ¶ 28e). The indictment does not need to definitively provide exact dates on which the overt acts

4

occurred. The use of the phrase "on or about" does not impact the sufficiency of the indictment or the ability to determine when the statute of limitations began to run.

Additionally, contrary to Defendant's argument that the allegations of the indictment are "unsupported by any kind of evidence," the indictment does not need to contain evidence of any of the overt acts of which Defendant is accused. (Doc. 156, at 5–6). Federal Rule of Criminal Procedure 7 only states, "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Third Circuit has held, "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989). The sufficiency of an indictment "may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence." *United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir. 1979). As explained, *supra*, the thirty-five-count indictment alleges several specific overt actions on specific dates, sufficient to put the Defendant on notice of the charges against him.

Therefore, neither the original indictment nor the First or Second Superseding Indictments were insufficient and did not violate the statute of limitations.

In addition to the fact that the statute of limitations was never violated, the Defendant's motion fails because he waived the right to file pretrial motions in his plea

5

agreement with the Government. The Third Circuit has held, "It is well established that a

criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-

jurisdictional issues." *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007). The statute

of limitations defense is not a jurisdictional issue and can thus be waived. *Musacchio v.*

*United States*, 136 S. Ct. 709, 718, 193 L. Ed. 2d 639 (2016); *United States v. Karlin*, 785

F.2d 90, 92–93 (3d Cir. 1986); *see also United States v. Soriano-Hernandez,* 310 F.3d

1099, 1103–04 (8th Cir. 2002)(collecting circuit cases where the statute of limitations

defense was waived after defendants entered guilty pleas).

Defendant entered a guilty plea at a Rule 11 hearing, which the Court found to be

knowing and voluntary. (Doc. 123, at 9–22). Defendant did not raise the statute of limitations

defense at any time. (*See id.*). Having entered an unconditional, knowing and voluntary

guilty plea, the Defendant waived the right to assert a statute of limitations defense.

In reply, Defendant argues, "In fact, at the change of plea hearing, the court informed

the defendant (movant) that the plea agreement contained a 'waiver' of direct appeal rights;

But makes no indication of waiver of claims of statutes of limitations violations, and

otherwise." (Doc. 156, at 2). Defendant further argues, "[D]efense counsel immediately

before the change of plea hearing merely read the plea agreement to movant Jacome but

6

had never supplied him with a copy of it before hand, i.e., before the actual day of the

hearing, and to date he has not been given a copy of the plea agreement." (*Id.* at 3–4).[1]

Federal Rule of Criminal Procedure 11, governing pleas, requires the Court to inform

a defendant of, and determine he understands, the meaning and consequences of his plea

agreement. *See* Fed. R. Crim. P. 11(b)(1)(A–O), (2), (3). A review of the plea colloquy held

on July 11, 2019 shows that all the requirements of Rule 11 with respect to establishing a

knowing and voluntary guilty plea were satisfied. As required, the Court engaged in the

required plea colloquy with the Defendant, informed the Defendant of the meaning and

consequences of his plea, and determined the Defendant understood all of the required

items of Rule 11(b)(1), including the terms of the plea agreement (Doc. 123, at 12:25–14:6),

which includes a waiver of the right to appeal (*Id.* at 14:21–15:1). Fed. R. Crim. P. 11(b)(1),

(2), (3). Defendant testified that he read and reviewed the plea agreement with counsel:

> Q. Now, before you put your name on this document,  did you read it?
> A. Yeah.
> Q. Did you discuss it with Mr. Yeager?
> A. Yes.
> Q. Did you have questions for him, and if you did, did he answer them for you?

---

[1] Defendant's argument that his plea was not informed was not raised in his initial brief. (*See generally* Doc. 143). The Court notes, "It is improper for a party to present a new argument in his or her reply brief." *United States v. Medeiros*, 710 F. Supp. 106, 110 (M.D. Pa.), *aff'd*, 884 F.2d 75 (3d Cir. 1989). Generally, arguments raised for the first time in a reply brief are waived. *United States v. Brown*, No. 1:02-CR-146, 2013 WL 6182032, at \*12 n.10 (M.D. Pa. Nov. 25, 2013). However, the Court also notes it generally gives greater leeway to pro se litigants. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993)("[W]e have traditionally given pro se litigants greater leeway where they have not followed the technical rules of pleading and procedure."). Even though Jacome's argument is only tangentially related to the arguments raised in the Government's opposition brief, the Court will nonetheless address it.

A. Yes.
Q. Do you have questions here today?
A. No.

(*Id.* at 12:6–15). Defendant also testified that he was satisfied with his counsel's advice:

Q. Now, Mr. Jacome, let me ask you about the assistance of counsel. Mr. Yeager is—is here with you. Have you had enough time to talk with Mr. Yeager about this case?
A. Yes.
Q. In the course of talking to him, have you told him everything you know about the case?
A. Yes.
Q. Are you satisfied with the advice he's given you?
A. Yes.
Q. Are you satisfied with his efforts that he's made on your behalf?
A. Yes.

(*Id.* at 5:5–16). Defendant additionally agreed in his plea agreement that he discussed the

meaning and consequences of the agreement with his attorney and agreed his attorney's

legal services and advice were satisfactory:

The Defendant agrees that the defendant has discussed this case and this plea agreement in detail with the defendant's attorney who has advised the defendant of the defendant's Constitutional and other trial and appeal rights, … possible defenses, … and other potential consequences of pleading guilty in this case. The defendant agrees that the defendant is satisfied with the legal services and advice provided to the defendant by the defendant's attorney.

(Doc. 113, at ¶ 41).

Defendant never stated that he requested but did not receive a copy of the plea

agreement or that he was dissatisfied with his counsel's efforts. During the plea colloquy,

the Court asked Defendant's counsel, "Now, I know filed of record in this case is a plea

agreement. Mr. Yeager [Defendant's retained counsel], do you have a copy for your client?"

8

(Doc. 123, at 11:16–17). Mr. Yeager responded, "Yes, I do, Your Honor." (*Id.*, at 11:18). The

Court then asked the Defendant if he read and reviewed the plea agreement:

> Q. Mr. Jacome, if you go to page 38, which is the final page of the document,
> at the top of the page in capital letters is the word acknowledgements. Then
> below that word there are two sentences that say, quote, I have read this
> agreement and carefully reviewed every part of it with my attorney, I fully
> understand it and I voluntarily agree to it, end quote. Then beneath that in
> typewritten capital letters is the name Jonathan Jacome, and above that
> typewritten name is a signature. Whose signature is that?
> A. That's mine, Your Honor.
> Q. Now before you put your name on this document, did you read it?
> A. Yeah.
> Q. Did you discuss it with Mr. Yeager?
> A. Yes.
> Q. Did you have questions for him, and if you did, did he answer them for you?
> A. Yes.
> Q. Do you have questions here today?
> A. No.

(*Id.* at 11:21–12:15). The Court then asked that the essential terms of the plea agreement

be summarized and read aloud during the Defendant's plea colloquy. (*Id.* at 12:16–14:1).

The Court asked Defendant, "You heard Ms. Roberts outline what the essential terms of the

plea agreement are. Are the terms as she's outlined the terms as you understand them?"

(*Id.* at 14:3–5). Defendant replied, "Yes, Your Honor." (*Id.* at 14:6). The Court also confirmed

the Defendant understood the meaning and consequences of the essential terms of the plea

agreement individually. (*Id.* at 14:7–16:4).

Defendant testified that he read the plea agreement and discussed it with his

counsel. Defendant acknowledged that he understood all of the essential terms of the

agreement. The fact that the Defendant now claims he did not receive a physical copy of

9

the plea agreement does not vitiate the validity of his guilty plea. Defendant was informed as to the meaning and consequences of the plea agreement. The transcript of the plea colloquy shows a knowing, voluntary and intelligent waiver of Defendant's trial rights and a knowing, voluntary and intelligent plea of guilty to Count 30 of the Second Superseding Indictment.

## III. CONCLUSION

In sum, the applicable statute of limitations for the crimes alleged in the indictments had not expired when the original indictment was filed. Furthermore, Defendant waived any right to raise a statute of limitations defense when he unconditionally, knowingly and voluntarily entered a plea of guilty. For the foregoing reasons, this Court will deny Defendant's Motion to Quash Indictment (Doc. 143) as set forth in this Memorandum Opinion.  A separate Order follows.

Robert D. Mariani
United States District Judge