**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **3:17-cr-00205** |
| | : | **(JUDGE MARIANI)** |
| **JONATHAN JACOME,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On July 11, 2019, pursuant to a written plea agreement (Doc. 113), Jonathan

Jacome entered a plea of guilty with respect to taking part in a Money Laundering

Conspiracy in violation of 18 U.S.C. § 1956(h). Presently before the Court is Jacome's 28

U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody. (Doc. 219.) For the reasons set forth below, the Court will deny Jacome's § 2255

Motion.

### II. PROCEDURAL HISTORY

On July 11, 2017, an Indictment was filed relating to the various criminal acts

undertaken by Jonathan Jacome. (Doc. 1.) On August 3, 2017, Attorney Joseph J. Yeager

entered his appearance as Jacome's defense counsel. On August 8, 2017, a Superseding

Indictment was filed. (Doc. 13.) On September 11, 2018, a Grand Jury returned a Second

Superseding Indictment accusing Jonathan Jacome, his sister Cindy Jacome, and his then-

girlfriend Melissa Castiglione, of conspiracy to defraud the government, false claims, theft of

public money, aggravated identity theft, conspiracy to commit wire fraud, money laundering

conspiracy, money laundering, conspiracy to obstruct justice, and obstruction of justice.

(Doc. 82.) Following the indictments, Jacome was released under conditions of supervision.

(Docs. 10, 39.)

On July 11, 2019, pursuant to a written plea agreement with the Government (Doc.

113), Jacome pled guilty to Count 30 of the Second Superseding Indictment (Doc. 82),

which charged Jacome with Money Laundering Conspiracy in violation of 18 U.S.C. §

1956(h). Jacome also stipulated in his plea agreement that he committed theft of public

funds, wire fraud, and bank fraud. (Doc. 113.)

On July 3, 2019, Jacome hit a vehicle occupied by Arianny Mendez-Perez while

driving in Hazelton, Pennsylvania. (Police Criminal Complaint ("Crim. Compl."), Doc. 227-1,

at 5.) Jacome fled the scene prior to authorities arriving and was found by authorities blocks

away appearing intoxicated and running away from the scene of the accident. (Crim. Compl.

at 5.) Jonathan never reported this contact with authorities to his Probation Officer as

required by his conditions for release. (Doc. 123 at 28:8-11.) During Jacome's change-of-

plea hearing, this Court ordered Jacome detained in light of the July 3, 2019, car incident.

(Doc. 123 at 30:18-25.)

On September 23, 2019, Jacome filed a *pro se* Motion to Quash Indictment. (Doc. 129.) On September 24, 2019, the Court denied Jacome's first Motion to Quash Indictment. (Doc. 130.) Jacome then unsuccessfully attempted to appeal that decision.

On January 31, 2020, Jacome filed a *pro se* Motion for Leave to Proceed *Pro Se* and to Dismiss Private Counsel. (Doc. 143.) On February 25, 2020, the Court granted Jacome's Motion. (Doc. 142.)

On February 6, 2020, Jacome filed another *pro se* Motion to Quash Indictment (Doc. 143.) On June 8, 2020, the Court denied Jacome's second *pro se* Motion to Quash Indictment. (Doc. 176.) Jacome also unsuccessfully attempted to appeal that decision.

On June 12, 2020, the final Presentence Investigation Report ("PSR") (Doc. 177) issued along with an Addendum to the Presentence Report that addressed various objections Jacome submitted in his *pro se* capacity. (Doc. 178.) Jacome objected to the four-level increase for his leadership in the money laundering conspiracy pursuant to USSG § 3B1.1(a). Jacome also objected to the two-level enhancement for obstruction of justice under USSG § 3C1.1 due to his actions directing codefendants Cindy Jacome and Melissa Castiglione to provide false testimony to a Federal Grand Jury. (Doc. 177 at 8.) Finally, Jacome objected to the denial of a three-level reduction for acceptance of responsibility, in part due to his actions relating to his July 3, 2019, arrest, pursuant to USSG § 3E1.1. (Docs. 177 at 8-9; 178.)

On June 23, 2020, the Court sentenced Jacome to 169 months in prison, a sentence that was in the middle of the guidelines of 151 to 188 months. (Doc. 190 at 2; Doc. 193:14-15.) In doing so, the Court rejected all of Jacome's objections to the PSR. (*Id*.)  Jacome appealed the Court's decision, and the Court of Appeals consolidated all three of his appeals under Case Number 20-2350 and dismissed each of them due to the express waiver Jacome executed as part of his plea agreement. (Doc. 215.)

On August 30, 2021, Jacome filed the at-issue 28 U.S.C. § 2255(a) Motion alleging that his loss of a three-level reduction for acceptance of responsibility and the application of an enhancement for obstruction of justice were due to his former attorney's ineffective assistance, and that Attorney Yeager was also ineffective for declining to file a Motion to Quash Indictment. (Docs. 219, 220.)

### III. STANDARD OF REVIEW

#### a. 28 U.S.C. § 2255

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).  A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. 2255(f)(3).  A § 2255 motion may attack

a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.  28 U.S.C. § 2255(b).

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing.  *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993).  Rather, § 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).  Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).  If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate.  *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be

served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005), the Court of

Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255, our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134 (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

*Id.* at 545-46. Generally, the petitioner bears the burden of proof in § 2255 proceedings.

*See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised for the first time on

collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on

an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out

in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1)

that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 689–92). For the first prong, *Strickland* emphasizes that a court's evaluation of an attorney's performance must be "highly deferential" so as to diminish "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. To establish prejudice under *Strickland*'s second prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The petitioner bears the burden of establishing that counsel's performance was constitutionally inadequate and prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002). In asserting prejudice, the petitioner must show more than a conceivable likelihood that the outcome would have been different.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v. Belmontes*, 558 U. S. [15] (2009) (per curiam) (slip op., at 13); *Strickland*, 466 U. S., at 693. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693.

*Harrington v. Richter*, 562 U.S. 86, 112-113 (2011).

## IV. ANALYSIS

Jacome's § 2255 Motion seeks relief on the basis that he received ineffective assistance of counsel. (Doc. 220.) Jacome sets forth three distinct grounds for relief. First, Jacome alleges that "[c]ounsel was ineffective for not addressing the impact of a DUI arrest prior to petitioner's entry of a plea." (Doc. 220 at 1.) Second, Jacome alleges that his "[c]ounsel was ineffective for failing to address issues that resulted in a sentencing guidelines enhancement for obstruction of justice." (Doc. 220 at 4.) Finally, Jacome alleges that his "[c]ounsel was ineffective for failing to request a bill of particulars or, in the alternative, failing to move to quash the indictment in a timely manner." (Doc. 220 at 9.) As the Court explains below, none of these allegations warrant a hearing or relief for Jacome. The Court will address each of Jacome's alleged grounds for relief in the order in which they were raised.

### A. Ground One

Jacome's first ground for relief alleges that "[c]ounsel was ineffective for not addressing the impact of a DUI arrest prior to Petitioner's entry of a plea." (Doc. 220 at 1.) Jacome specifically contends that Yeager failed to advise him that his July 3, 2019, car incident could "be presented to the Court as an example of continuing criminal activity." (Doc. 220 ¶ 5.) Jacome alleges that "[c]ounsel was also ineffective in failing to inform the Court and the Government that the aforementioned Arianny Mendez-Perez was willing to testify before the state court that the incident was, in fact, simply a fender bender and that it

was an overzealous neighbor who suggested to local police that there was something more to the incident." (Doc. 220 ¶ 7.) Finally, Jacome alleges that "effective counsel would have made his client aware of objections to his Presentence Report ('PSR') filed by the Government given how any adoption of said objections would result in significantly higher Sentencing Guidelines." (Doc. 220 ¶ 8.)

To comport with the Fifth Amendment, a defendant's plea must be voluntary and intelligent. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969). To satisfy *Strickland*'s "objective standard of reasonableness" with respect to a plea, 466 U.S. at 688, an attorney must "give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer'", *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, 571 U.S. 1224 (2014). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Jacome's claim that his counsel was ineffective because Jacome was unaware of the possible maximum sentence he would face by pleading guilty to his charge (Doc. 220 ¶ 8) is without merit. The record conclusively demonstrates that Jacome was fully aware of the maximum liability he may be exposed to by entering his plea of guilty:

> THE COURT: When [prosecuting Assistant United States Attorney Jenny Roberts is] done I'm going to ask you whether the terms of the plea agreement as she explained them are the terms as you understand them.

JACOME. Okay.

THE COURT: Ms. Roberts?

ASSISTANT UNITED STATES ATTORNEY ("A.U.S.A.") ROBERTS: Thank you, Your Honor. The essential terms of the plea agreement include that the defendant is going to enter guilty plea as the Court has already stated to count 30 of the superseding indictment, which charges the defendant with a violation of Title 18 United States Code Section 1956 H., money laundering conspiracy. The maximum penalty for that offense is imprisonment for a period of 20 years, a fine of $500,000 or twice the value of the funds laundered, whichever is greater. A maximum term of supervised release for three years and a special assessment of $100. If the defendant can adequately demonstrate recognition and affirmative acceptance of responsibility to the government as required by the sentencing guidelines, the government will recommend that the defendant receive a three-level reduction in the defendant's offense level for acceptance of responsibility.

There's also a forfeiture allegation that the defendant has agreed that the forfeiture listed in the superseding indictment that he's going to agree to that forfeiture. The defendant also agrees that $7,760,558 is the amount of the loss resulting from the defendant's action. The defendant agrees to make full restitution in the amount of that in accordance with a schedule to be determined by the Court.

The Court is not bound by the terms of the plea agreement. Thus, the Court is free to impose upon the defendant any sentence up to and including the maximum sentence already stated. And the plea agreement also contains a direct appeal waiver.

BY THE COURT:

Q. You heard Ms. Roberts outline what the essential terms of the plea agreement are. Are the terms as she's outlined the terms as you understand them?

A. Yes, Your Honor.

Q. In particular, you understand that this plea agreement as Ms. Roberts indicated says that you admit that you committed the underlying offenses

from which the laundered funds were derived, to wit, theft of public money in violation of Title 18 United States Code Section 641; wire fraud in violation of Title 18 United States Code Section 1343, and bank fraud in violation of Title 18 United States Code Section 1344 and further that as part of this -- the underlying offenses you were responsible for loss amount of more than $3,500,000 but less than $9,500,000? Do you understand that?

A. Yes.

Q. You heard her indicate what the restitution terms are as well, $7 million?

A. Yes.

Q. And most importantly, you understand in paragraph 36 that you are waiving your appeal rights? By waiving means giving up -- you're waiving your right to appeal both the conviction that would arise from your guilty plea as well as any sentence that's imposed in this case. Do you understand that?

A. Yes.

Q. You heard Ms. Roberts outline what the maximum possible punishment is in this case?

A. 20 years.

A.U.S.A. ROBERTS: Yes, Your Honor.

BY THE COURT:

Q. You also understand that whatever recommendations are made to me are not binding on me, that I am free to reject any recommendation that's made either by side in this case? Do you understand that?

A. Yes, Your Honor.

Q. That will -- if I were to reject the recommendation that was made, that would not give you the grounds to withdraw your plea. Do you understand that?

A. Yes, Your Honor.

Q. If it turns out that the sentence is more severe than you expected, more severe than you discussed with Mr. Yeager, you're still going to be bound by your plea and you will have no have the right to withdraw on the ground that the sentence is more severe than you thought, more severe than what Mr. Yeager said it might be or for any other reason? Do you understand that?

A. Yes, Your Honor.

(Doc 123 at 13-15.)

Additionally, Jacome cannot now claim that he was not satisfied with Yeager's

performance when Jacome expressly confirmed that he was satisfied with Yeager at the

change-of-plea hearing:

Q. Now, Mr. Jacome, let me ask you about the assistance of counsel. Mr. Yeager is -- is here with you. Have you had enough time to talk to with Mr. Yeager about this case?

A.  Yes.

Q. In the course of talking to him, have you told him everything you know about the case?

A.  Yes.

Q. Are you satisfied with the advice he's given you?

A. Yes.

Q. Are you satisfied with his efforts that he's made on your behalf?

A. Yes.

(Doc. 123 at 5.)

In light of the extensive plea colloquy undertaken at the time that Jacome entered his guilty plea, there is no basis by which Jacome can claim that he was not satisfied with his counsel's performance, that his plea was not "voluntary and intelligent," or that he was not aware of his maximum possible sentence exposure. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

Additionally, Jacome's argument that "effective counsel would have made his client aware of objections to his Presentence Report" (Doc. 220 ¶ 8) is contradicted by the fact that Yeager was dismissed as Jacome's counsel, at Jacome's request, six days following the release of the first draft PSR. (*See* Docs. 145, 147.) Jacome cannot now complain of his own decision to proceed *pro se* with respect to nearly every stage of sentencing.[1] Jacome also cannot claim that any alleged error in his sentencing constituted a fundamental defect. As the Third Circuit has noted,

> Based on *Addonizio*, other circuit courts have concluded that a sentencing error is not a fundamental defect requiring § 2255 relief when a prisoner is sentenced below the statutory maximum. *See Foote*, 784 F.3d at 937; *see also Spencer*, 773 F.3d at 1138 (citing *Addonizio*, 442 U.S. at 186–87, 99 S.Ct. 2235) (noting that a sentence "less than the statutory maximum sentence prescribed by Congress" is lawful, and thus not a fundamental

---

[1] To the extent Jacome alleges that his counsel was ineffective for failing call Arianny Mendez-Perez to testify as to the car incident to challenge the denial of a sentencing reduction for acceptance of responsibility pursuant to USSG § 3E1.1, Jacome was his own counsel throughout all relevant stages of sentencing. Jacome cannot blame his former counsel for his own decision to proceed *pro se* and Jacome was not prevented from calling Mendez-Perez at the sentencing hearing. Additionally, even if the Court were to take Jacome's claim regarding Mendez-Perez's willingness to testify as true, there is no evidence in the record to suggest that Mendez-Perez would have specifically rebutted the Government's allegations that Jacome was drunk and that he fled the scene. (Doc. 220 ¶ 5) (Alleging only that Mendez-Perez was willing to testify that the incident was a fender bender, not as to whether Jacome was intoxicated or whether he fled the scene.)

defect); *Hawkins*, 706 F.3d at 822, 824; *Sun Bear*, 644 F.3d at 705; *cf.*
*Snider*, 908 F.3d at 191 (citing *Addonizio*, 442 U.S. at 187, 99 S.Ct. 2235)
(noting that the defendant's corrected sentence would fall within the same
Guidelines range). We agree.

*United States v. Folk*, 954 F.3d 597, 605 (3d Cir. 2020).

To the extent Jacome alleges an error in sentencing on the part of the Court,

because Jacome's sentence of 169 months (Doc. 190 at 2) was below the maximum

possible sentence of 188 months (Doc. 193:14-15), there is no cognizable claim for relief on

this basis. (*See also* Presentence Report, Doc. 177 ¶ 65 (Stating "the guideline

imprisonment range is 151 to 188 months")). Jacome also fails to satisfy *Strickland*'s second

prong by failing to show that he was prejudiced because he was representing himself

throughout the relevant stages of sentencing. Therefore, Jacome's first ground does not

warrant a hearing or relief.

## B.  Ground Two

Jacome's second ground for relief alleges that "[c]ounsel was ineffective for failing to

address issues that resulted in a sentencing guidelines enhancement for obstruction of

justice." (Doc. 220 at 4.) Specifically, Jacome alleges that his counsel was ineffective

because "[a]t no point in these proceedings did counsel Yeager alert his client to the

possibility that these conversations [with Melissa Castiglione and Cindy Jacome prior to

their grand jury testimony] could be perceived as obstruction of justice." (Doc. 220 ¶ 14.) In

response, the Government contends that Jacome admitted to obstruction of justice, and

that, in any event, Attorney Yeager was not responsible for Jacome's decision to tell two

grand jury witnesses to lie. (Govt's Br. Opp., Doc. 227, at 18.) For the reasons explained below, the Court agrees with the Government.

Throughout Jacome's Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255, he attempts to justify his conversations with Melissa Castiglione and Cindy Jacome as benign discussions surrounding their grand jury testimony. (Doc. 220 ¶¶ 10-15.) This after-the-fact explanation of events is contradicted by Jacome's own admission in his Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255 that he did "encourage Castiglione and his sister Cindy Jacome to lie to the grand jury about the source of the funds used to purchase 150 Bella Vista Drive." (Doc. 220 ¶ 16.) As the Government points out in their Memorandum of Law Opposing Petitioner's Motion, this is by definition obstruction of justice. (Govt's Br. Opp. at 18.) It is of no moment that Jacome alleges there were benign reasons behind his attempt to obstruct the Grand Jury's investigation.

Additionally, Jacome cannot convincingly argue that Yeager's performance fell below an "objective standard of reasonableness," *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007), by failing to anticipate that Jacome was going to instruct two grand jury witnesses to lie and failing to advise him against doing so. Yeager had no responsibility to instruct Jacome against every possible criminal act he might undertake at some point in the future. *See, e.g., Singleton v. United States*, 134 F. Supp. 3d 807, 815 (D. Del. 2015) (Criminal defendant was not prejudiced by trial counsel's alleged failure to advise him that his testimony might result in an obstruction of justice enhancement.) Jacome was fully aware of

15

the fact that there was a grand jury investigation and should have known that instructing

witnesses to lie to a grand jury or in connection with testimony in another matter is a crime.

His counsel's performance did not fall below an objective standard of reasonableness for

failing to anticipate Jacome's future crimes. Thus, Jacome's second ground fails to meet

*Strickland*'s first prong and does not warrant a hearing or relief.

It was also not Yeager's responsibility to argue against the obstruction enhancement

at sentencing. As the Court has noted, *supra*, despite the Court's warning against

proceeding *pro se*, the Court granted Jacome's Motion for Leave of Court to Proceed *Pro*

*Se* and to Officially Dismiss Private Counsel on February 25, 2020. (Doc. 142.) Jacome was

made aware of the Government's intent to seek the obstruction enhancement, and he filed

*pro se* objections to the proposed enhancement. (*See* Doc. 178.) The parties argued the

enhancement at sentencing (Doc. 193 at 2-24), and the Court ruled in the Government's

favor. (*Id*. at 29.) Throughout the relevant stages of sentencing, Jacome was acting in a *pro*

*se* capacity, and cannot contend that he was prejudiced by his own performance. *See*

*Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975) ("[A] defendant who elects to represent

himself . . . cannot thereafter complain that the quality of his own defense amounted to a

denial of 'effective assistance of counsel.'"); *See also United States v. Abdur-Rahman*, 512

F. App'x. 1 (2nd Cir. 2013) ("It is well accepted that a defendant who exercises his right to

appear pro se is not permitted to complain later about the quality of his own defense or raise

an ineffective assistance of counsel claim.") Additionally, as the Court discussed, *supra*, to

the extent Jacome alleges any error in sentencing on the part of the Court, his claim must fail given that Jacome's sentence was below the maximum possible sentence. *See Folk*, 954 F.3d at 605. Because Jacome does not meet either of *Strickland*'s prongs with respect to his second ground for relief, the Court concludes that no hearing or relief is warranted on this ground.

## C. Ground Three

Jacome's final ground for relief alleges that "[c]ounsel was ineffective for failing to request a bill of particulars or, in the alternative, failing to move to quash the indictment in a timely manner." (Doc. 220 at 9.) Specifically, Jacome argues that his counsel was ineffective because Jacome "paid him to file a Motion to Quash the Indictment that counsel subsequently refused to file based on a misunderstanding on which indictment would serve as the controlling document for the purpose of the statute of limitations." (Doc. 220 ¶ 30.) The Government responds by pointing out that Jacome's Motion to Quash was fully considered by the Court and therefore does not meet *Strickland*'s first or second prongs. (Govt's Br. Opp. at 19.) For the reasons explained below, the Court agrees with the Government.

Jacome alleges that his "[c]ounsel was ineffective for taking payment that was explicitly offered for the filing of a motion that was then never filed, resulting in the Petitioner having to proceed pro se." (Doc. 220 ¶ 36.) As the Court has noted, *supra*, Jacome cannot allege ineffectiveness on the part of his counsel for Jacome's own decisions. (*See* Doc.

142.) It was Jacome's decision alone to proceed *pro se*, and he cannot successfully allege

that he was prejudiced by his counsel as a result of his decision. *Faretta,* 422 U.S. at 834 n.

46. Nor can Jacome successfully allege that Yeager was ineffective for deciding not to to file

a motion that was without merit when he served as counsel prior to his dismissal by

Jacome. As the text messages between Jacome's brother and Yeager indicate, Yeager was

fully aware that such a motion was likely without merit:

> JACOME'S BROTHER: Hey Joe, I'm sorry to be a pain, I'm sure you already
> heard about Jon's motion... he would like for you to sign off on it, I can bring
> you a payment, I also wanted to know the balance of what he owes cause
> Brenda only had it in her book that he paid $7000 and that was just one of his
> payments
>
> YEAGER: I do not believe his motion has any merit. He is charged with
> conspiracy. Statut of limitations starts when the last act is completed. Not the
> first. It will be filed this week. I have another atty. Helping who ddoes alot of
> third circuit applellate work.

(Doc. 220-4 at 2.)[2]

Additionally, the Third Circuit has recently noted that judicial scrutiny of counsel's

strategy must be viewed with deference:

> [W]e are cognizant that "[j]udicial scrutiny of counsel's performance must be
> highly deferential." *See id.; Burt v. Titlow*, 571 U.S. 12, 22–23, 134 S.Ct. 10,
> 187 L.Ed.2d 348 (2013); *see also United States v. McCoy*, 410 F.3d 124, 135
> (3d Cir. 2005) ("[C]ourts have been highly deferential to counsel's strategic
> decisions."). And while judges may be tempted to second guess defense
> counsel's decisions, we must keep in mind that "advocacy is an art and not a
> science, and ... strategic choices must be respected in these circumstances if
> they are based on professional judgment." *Strickland*, 466 U.S. at 681, 104
> S.Ct. 2052.

———————————

[2] Errors in the text appear in the original text messages provided to the Court by Jacome.

*Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022).

Yeager's text messages, as well as the Court's decision with respect to Jacome's

Motion to Quash (Doc. 175), demonstrate that Yeager reasonably declined to file a motion

that he determined had little merit. Because the Court is deferential to defense counsel's

decisions as to whether to file a motion, *Gaines*, 33 F.4th at 712, and in light of the Court's

previous opinion with respect to the Motion to Quash discussed below, Jacome fails to meet

the first prong of *Strickland*, and no hearing or relief is warranted on this basis.

As discussed, *supra*, Jacome did file, and the Court reviewed, multiple Motions to

Quash the Indictment. (*See* Docs. 129, 130, 143, 175, 176.) Specifically, the Court ruled on

the merits of Jacome's Motion to Quash and his statute of limitations argument that he

again raises in this § 2255 Motion. (*See* Doc. 175.) As previously explained:

> Defendant's argument that the statute of limitations had passed by the date of
> the indictment is based on an incorrect legal argument. [. . .] The applicable
> statute of limitations on the charged offenses is five years. 18 U.S.C. § 3282.
> Defendant asserts that the statute of limitations ran because more than five
> years elapsed between the date cited by the grand jury as the start of the
> conspiracy–May 1, 2011–and the date the original indictment was filed–July
> 11, 2017. (Doc. 143, at 5). However, the statute of limitations for conspiracies
> does not begin to run on the date of the first overt act, it begins to run on the
> date of the last overt act committed during the existence of the conspiracy.
> *Fiswick v. United States*, 329 U.S. 211, 216, 67 S. Ct. 224, 227, 91 L. Ed. 196
> (1946); *see also Luparella v. United States*, 335 F. App'x 212, 215 (3d Cir.
> 2009)("[I]t is well-established that the statute of limitations runs only from the
> time of the last overt act." (internal quotations omitted)). The August 8, 2017
> indictment alleged the date of the last overt act committed during the existence
> of the conspiracy was August 9, 2012. (Doc. 1, at ¶ 6). Therefore, the time
> between the date alleged in Count 1 of the original indictment and the date of
> the original indictment was less than five years. Furthermore, Count 30 of the

> Second Superseding Indictment, to which Defendant pleaded guilty, alleges the date of the last overt act was October 9, 2014. This is less than three years from the August 8, 2017 indictment and clearly does not violate the five-year statute of limitations. (Doc. 82, at ¶ 27).

(Doc. 175 at 3-4.)

The Court's previous opinion on this issue reveals that Jacome was not prejudiced by Yeager's decision to not file the Motion to Quash (Doc. 143) given that the Motion was disposed of on the merits. There is no basis by which Jacome can successfully contend that, had Yeager filed the Motion at the time that Jacome requested, the Court's decision on the merits would have differed. Because Jacome fails to make a showing that there was a "substantial, not just conceivable" likelihood that the outcome of his case would have been different, *Harrington*, 562 U.S. at 112-113, the Court concludes that Jacome is not entitled to a hearing or any relief on this basis.

## V. EVIDENTIARY HEARING

Section 2255(b) advises that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The decision to hold a hearing is wholly within the discretion of the district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D.Pa. March 1, 2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In this case, no evidentiary hearing is necessary because "the motion and files and records of this case

show conclusively that the movant is not entitled to relief." *Eckenberger*, 2022 WL 609208, at *5 (M.D.Pa. March 1, 2022) (internal quotations and citations omitted)); *see also Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly emphasized that bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition"); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 300-02 (3d Cir. 1991) (declining to hold evidentiary hearing on petitioner's § 2255 ineffectiveness claim "absent identification of some facts that support a contention of ineffectiveness" because doing otherwise will encourage meritless petitions burdening judicial resources). Here, Jacome is not entitled to relief and his allegations rise only to the level of bare assertions that are clearly contradicted by the record.

## VI. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at *8 (E.D.Pa. June 8, 2022) (citing 28 U.S.C. § 2253(c)(1)). The petitioner must make a "substantial showing of the denial of a constitutional right" for the district court to issue a COA, which requires a showing that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, a COA is not warranted on Jacome's claims because the Court finds that reasonable jurists would not find this Court's resolution of Jacome's constitutional claims debatable or wrong.

## VII. CONCLUSION

For the aforementioned reasons, the Court will deny Jonathan Jacome's 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 219.) A separate Order will follow.

Robert D. Mariani
United States District Judge